Rel: April 25, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

————————————————

### SC-2024-0424

————————————————

## Yadira Ordonez, individually and as mother and next of friend of S.C.O., a minor

### v.

## Capitol Farmers Market, Inc.

### Appeal from Montgomery Circuit Court
### (CV-23-900748)

BRYAN, Justice.

Yadira Ordonez, individually and as mother and next friend of her

minor daughter, S.C.O., sued Capitol Farmers Market, Inc. ("CFMI"), in

the Montgomery Circuit Court ("the trial court") seeking damages for injuries Ordonez alleged S.C.O. had received from hot soup Ordonez purchased at Capitol International Market. CFMI moved for a summary judgment on the ground that it did not operate Capitol International Market. Ordonez opposed the motion and asked the trial court for more time to complete discovery. The trial court entered a summary judgment in favor of CFMI, and Ordonez filed this appeal. For the reasons explained below, we reverse the trial court's judgment and remand this case for further proceedings.

## Background

Ordonez filed her complaint in the trial court on June 5, 2023. She alleged that, just two months earlier, on April 7, 2023, she and her nine-year-old daughter, S.C.O., had shopped at Capitol International Market, a grocery store in Montgomery. Ordonez alleged that she had purchased hot soup at the store's deli and handed the container to S.C.O. when they returned to her car. The soup spilled, and S.C.O. suffered burns as a result. Ordonez sued CFMI and several fictitiously named defendants. She sought damages based on claims alleging negligence; wantonness; negligent and wanton hiring, training, and supervision; liability under

2

Alabama's Extended Manufacturer's Liability Doctrine; and breach of warranty.

CFMI answered the complaint. It denied that it operated a grocery store or restaurant at the time of the events Ordonez complained of and denied all allegations of liability that were based on the doctrine of respondeat superior. The parties exchanged and responded to interrogatories and requests for the production of documents. The record shows that they discussed the scheduling of party depositions, but none were scheduled before CFMI moved for a summary judgment on November 9, 2023.

As the basis for its summary-judgment motion, CFMI noted that all the claims against it were based on theories of respondeat superior. Based on an affidavit from CFMI's owner, Yeun S. "John" Yim, CFMI asserted that it did not own the property where the grocery store was operated, that it did not operate the store, and that it did not have any agents or employees. Thus, CFMI argued, it could not be found liable and was entitled to a summary judgment. The trial court set the motion for a hearing just 21 days later, on November 30, 2023.

3

Yim's affidavit identified the entity operating the grocery store, the entity that owned the property, and the individual who leased the deli and operated it at the time of S.C.O.'s injuries. During the remainder of the proceedings, however, Ordonez never amended her complaint to add those entities as defendants. Thus, throughout the proceedings, CFMI remained the only named defendant.

In response to the trial court's setting the motion for a hearing, Ordonez filed a motion for a continuance under Rule 56(f), Ala. R. Civ. P. Ordonez asserted four grounds for her motion: 1) she needed to take Yim's deposition to test the details and truth of his statements; 2) the interrogatory responses submitted with CFMI's motion were unverified and different from those she had received; 3) she had asked CFMI to supplement its interrogatory responses to include an explanation of its position, but CFMI had not done so; and 4) she had filed a notice of her intent to serve a subpoena on the Montgomery County Health Department ("the health department") but would be unable before the summary-judgment hearing to obtain responsive documents necessary to support her position. Ordonez supported her motion with an affidavit from her attorney, as required by Rule 56(f).

CFMI opposed the motion for a continuance. It argued that no written discovery was outstanding and that, even if it was, that would not preclude the entry of a summary judgment. CFMI also argued that no discovery Ordonez could obtain would alter the basis for its motion, i.e., that CFMI did not operate the store or own the property. Thus, CFMI argued, Ordonez had not shown that the discovery she sought was crucial to her position against CFMI, as required by Rule 56(f). CFMI did substitute verified interrogatory responses for the draft responses that, it said, had been inadvertently included as an exhibit to its summary-judgment motion.

Nine days before the summary-judgment hearing, Ordonez filed her response to CFMI's summary-judgment motion. She argued on various grounds that more discovery was needed. CFMI replied the day before the hearing. The record on appeal does not show whether the summary-judgment hearing took place. The trial court did not expressly grant Ordonez's motion for more time to conduct discovery. However, it thereafter set CFMI's summary-judgment motion for another hearing two months later, on January 29, 2024.

One week before the second hearing set on CFMI's summary-judgment motion, Ordonez supplemented her motion for a continuance and her response to CFMI's summary-judgment motion. She submitted the health-department records that she had received in response to her subpoena and argued that those records called into doubt the veracity of Yim's affidavit and raised questions about CFMI's assertion that it did not have any employees or that it did not operate the grocery store. Thus, she argued, Yim's deposition was critical to her case against CFMI. She did not state why Yim's deposition had not yet been taken. She also argued, based on the health-department records, that genuine issues of material fact existed as to CFMI's ownership and control of the deli from which Ordonez had purchased the soup. Her attorney did not supplement his Rule 56(f) affidavit.

The record on appeal does not include any transcript of the January 29, 2024, hearing. The trial court entered its judgment granting CFMI's motion for a summary judgment on March 14, 2024. Ordonez moved to vacate the judgment. The trial court denied her postjudgment motion on June 6, 2024, and Ordonez filed her notice of appeal on July 3, 2024.

The evidence submitted by the parties shows the following facts. In her responses to CFMI's interrogatories, Ordonez offered the following narrative regarding the events made the basis of her suit.

> "On April 7, 2023, I went to the Capitol International Market in Montgomery to buy groceries and seafood for lunch to share at home with my family. I was with my three children, [S.C.O.], age 9, [J.O.], age 6, and [V.O.], age 4. We ordered the seafood soup from an older man at the cafeteria area. He told us it would be ready in about ten to fifteen minutes. While waiting, I talked to Oscar Martinez who works at the money wiring business inside the market and then I bought the groceries at the front cashiers. I then brought the children to my car in the parking lot, put them inside, and went back to get the soup. The older man told me the soup was ready and it was waiting on the glass counter tied in the bag. I picked up the bag and went back to my car. [S.C.O.] asked to sit in front. When she got in I asked her if she could hold the food while I buckled my seat belt. She said ok and I handed her the bag. As I buckled my seatbelt, she then started screaming and tried to lift herself from the seat but was buckled in. I saw the food spilled out on her and in her seat. I ran to her door, got her out, and took off her clothes. I saw pink marks on her back and rear and legs. I put her in the car stomach facing down to take her to our house about 3 or 4 minutes away. At home I brought her upstairs into the shower and saw the pink was now dark red. I called 911. Emergency people came to my door about 5 or 7 minutes later. I told them what happened. We found the lid to the soup in the car. They brought her to the hospital in Montgomery. The hospital in Montgomery then had to bring us to the children's hospital in Birmingham.

> "....

7

"[S.C.O.] was treated for burn injuries and continues to undergo recovery. [S.C.O.] has experienced and continues to experience severe physical pain and mental anguish."

CFMI has not disputed Ordonez's statements about the circumstances of S.C.O.'s injuries.

Three days after S.C.O. was injured, on April 10, 2023, an attorney for Ordonez sent CFMI and its registered agent, Yim, a letter notifying them of his representation and requesting that they preserve evidence related to the incident. Two days later, a man identifying himself as a security guard for "Capitol Farmers Market" called Ordonez's attorney in response to the letter. The attorney recorded the call and, it appears, submitted the recording to the trial court, together with an affidavit describing its contents. The attorney's affidavit emphasizes the fact that the caller did not deny employment by or affiliation with CFMI. According to the attorney, the caller admitted that the store sold food but denied that it sold hot food. The caller also did not mention any other operator of the deli.

Yim's affidavit filed in support of CFMI's summary-judgment motion explained that Yim and his sons owned and operated three companies: CFMI; Forest Park Produce, Inc. of Alabama ("Forest Park");

and Montgomery Capitol Properties, LLC ("Capitol Properties"). CFMI was incorporated in 2008. Its articles of incorporation state the business's purposes as food sales and real-estate development. Forest Park was incorporated in 2014. The stated purpose on its certificate of formation is listed as "Retail Supermarket and related services." Capitol Properties was formed in 2021.

A 2022 deed shows Capitol Properties' purchase of the property where the grocery store is located. A 2021 lease agreement shows that Forest Park had leased the property from Capitol Properties for five years for the operation of a grocery store. It is unclear how Capitol Properties acquired rights to support its 2021 lease to Forest Park before its 2022 purchase of the property. Nonetheless, Yim's affidavit explained that Forest Park operated the grocery store as "Capitol International Market" in April 2023 when Ordonez visited the store. Yim acted as store manager.

Yim stated in his affidavit that Sang Yim became President of CFMI in 2010 and that Yim himself became sole owner in July 2022. Yim stated that CFMI has no employees, that it has never owned the property where the grocery store is located, and that it was not operating Capitol

International Market at the time Ordonez visited it. Yim denied that CFMI ever had a contract with or communicated with Ordonez or S.C.O.

Yim stated that neither CFMI nor Forest Park prepared or served hot soup at the time of the incident. Yim explained that a man named Juan Hernandez had subleased the deli area of the store and operated it as a restaurant called Taqueria El Jarocho. The lease agreement, however, is between Hernandez and CFMI, not Capitol Properties or Forest Park. It was signed on April 1, 2023. Yim explained that he had negotiated the lease on behalf of Capitol Properties and had inadvertently used the wrong corporate name on the lease agreement.

According to Yim, Hernandez operated the restaurant without supervision, direction, or control by CFMI, Forest Park, or Capitol Properties. Yim's affidavit included a photo of a sign Hernandez placed outside the store and a copy of the Taqueria El Jarocho menu. Yim explained that Hernandez operated the restaurant for a few weeks and then abandoned it without paying rent as required by the lease agreement.

CFMI's answers to Ordonez's interrogatories show that Yim supplied the answers. The caption and header reference CFMI.

However, the answers identify Forest Park as "Defendant" and consistently supply information about and on behalf of Forest Park, although that entity had never been named as a defendant. The interrogatory answers deny Forest Park's operation of the restaurant, point to Hernandez as operator of Taqueria El Jarocho, and deny any authority by Forest Park to exercise supervision or control over Hernandez or his employees.

Ordonez supplied the trial court with records from the health department. The pertinent subpoena does not appear in the record. The health-department custodian's affidavit states that the records pertain to CFMI at the address of the grocery store. The records are divided by sections of the grocery store, which appear to operate under different permits from the health department. The sections are identified as bakery, fish, meat, store, produce, and deli. The records cover a span of years dating from 2008 to 2023 and include permit applications, inspection records, and records of complaints. All are in the name of CFMI, with either Yim or one of his sons as owner or operator. The records include documents related to May 2022 food-safety classes taken by two grocery-store employees, Kwang Yu and Willie Broadnax. The

11

receipt identifies the "Company Name" of the employees as CFMI. Yim, however, denied that CFMI had any employees at that time.

As to the deli, an August 2022 application for a permit to operate was made in the name of "Capitol Farmers Market (Deli)" at the address of the grocery store. The name of the business owner was listed as Sang Yim, although Yim's affidavit stated that he was the sole owner of the business at that time. The permit to operate a food-service establishment was issued to CFMI in September 2022 and permitted operation of the deli through September 2023.

The health department conducted an inspection of the deli on February 15, 2023. The inspection report identified the establishment name as Capitol Farmers Market (Deli), which was being operated under the permit issued to CFMI. The owner or manager was listed as Sang Yim. As part of that inspection, a notice of violation was issued under the CFMI permit to Kwang Yu at the grocery-store address. The items of violation noted are listed as having been corrected on March 3, 2023.

The next inspection record is from June 2023. It also was issued on the CFMI permit and listed Sang Yim as the owner or manager. Though it noted certain items that needed correction, it also noted that the deli

was "not currently operating." The report appears to have been received and signed by Kwang Yu.

## Analysis

We will first address Ordonez's argument that the trial court erred in failing to grant her more time to conduct discovery. "'[A] trial judge has broad discretion to grant or to deny a motion for a continuance.'" Harris v. Health Care Auth. of Huntsville, 6 So. 3d 468, 475 (Ala. 2008)(quoting McCullar v. Universal Underwriters Life Ins. Co., 687 So. 2d 156, 161 (Ala. 1996)(plurality opinion), citing in turn Wood v. Benedictine Soc'y of Alabama, Inc., 530 So. 2d 801, 805 (Ala. 1988)). We review the trial court's decision to deny a motion for a continuance under Rule 56(f) to determine whether the trial court exceeded its discretion. Rosser v. AAMCO Transmissions, Inc., 923 So. 2d 294, 300 (Ala. 2005).

Rule 56(f) provides:

"Should it appear from the affidavits of a party opposing the [summary-judgment] motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Ordonez relies heavily on the fact that CFMI's motion for a summary judgment came early in the proceedings. However, under Rule 56, "[t]he mere pendency of discovery does not bar the entry of a summary judgment." McCullar, 687 So. 2d at 161 (plurality opinion)(citing Reeves v. Porter, 521 So. 2d 963 (Ala. 1988)). The burden is on the nonmovant to show that discovery has been diligently pursued and that the information sought is crucial to the nonmovant's opposition to summary judgment. See Scrushy v. Tucker, 955 So. 2d 988, 1006-07 (Ala. 2006); Benton v. Clegg Land Co., 99 So. 3d 872, 884 (Ala. Civ. App. 2012). This information must be shown in the nonmovant's affidavit, as required by Rule 56(f). Benton, 99 So. 3d at 884.

> "A typical situation for the application of Rule 56(f) is where the opposing party cannot present by affidavits facts essential to justify his opposition because knowledge of those facts is exclusively with, or largely under the control of, the moving party. In such a situation the opposing party should present an affidavit showing that the knowledge or control of the facts is exclusively or largely with the moving party and describing any attempts to obtain those facts."

Griffin v. American Bank, 628 So. 2d 540, 542 (Ala. 1993).

Moreover, the material question is whether the information sought would defeat the summary-judgment motion on the particular issues raised before the trial court. See Burton v. Hawkins, 364 So. 3d 962, 979

14

(Ala. 2022) (holding that information sought from codefendant driver had no bearing on issues of State-agent immunity raised in pending motion); Parr v. Goodyear Tire & Rubber Co., 641 So. 2d 769, 771-72 (Ala. 1994) (involving motion based on assertion that company had sent no hazardous materials to landfill within meaning of federal regulations and holding that discovery seeking information regarding precisely what materials were sent and in what amounts was crucial to plaintiff's response); Noble v. McManus, 504 So. 2d 248, 250 (Ala. 1987) (holding that job description requested was crucial because it could show liability on part of defendant in workers' compensation case); Benton, 99 So. 3d at 885 (holding that testimony sought regarding subjects identified in Rule 56(f) affidavit could not have created genuine issue regarding particular dispositive facts).

In this case, Ordonez stated four grounds for her request for a continuance: 1) she needed to take Yim's deposition; 2) the interrogatory responses submitted with CFMI's motion were unverified; 3) she had asked CFMI to supplement its interrogatory responses; and 4) she had not yet received records from the health department. However, by the time the trial court made its ruling, CFMI had substituted verified

interrogatory responses and Ordonez had received and submitted the health-department records. We find her request for CFMI to supplement its interrogatory responses with an explanation of its position insufficient to satisfy the requirements of Rule 56(f), because she already had that information in Yim's affidavit and it was not critical to her response. Thus, we must consider Ordonez's request to take Yim's deposition.

The Rule 56(f) affidavit provided by Ordonez's attorney states that, on October 27, 2023, he asked CFMI's counsel for dates for Yim's deposition between November 20, 2023, and December 15, 2023. CFMI, however, made no response and instead filed its motion for a summary judgment on November 9, 2023. Yim's deposition certainly was within CFMI's control. CFMI's consistent response to Ordonez's request for a continuance was that further discovery was not necessary. Thus, it is clear that CFMI did not cooperate with Ordonez to complete Yim's deposition before the trial court ruled on its summary-judgment motion. We thus conclude that Ordonez was diligent in pursuing Yim's deposition, as required by Rule 56(f).

Still, Ordonez must show that the information she seeks from Yim's deposition is critical to her position on the issues raised by CFMI in its

motion for a summary judgment. The basis of CFMI's motion is that the company had no agents or employees and, thus, could not be held liable under the doctrine of respondeat superior; that CFMI did not own or operate the grocery store or the restaurant in the deli area of the store; and that CFMI exercised no control over either Forest Park or Hernandez. Those assertions are based almost entirely on Yim's affidavit.

> Ordonez's Rule 56(f) affidavit states:
>
> "The Plaintiff wishes to depose the owner of the Defendant, John Yim, and/or a Rule 30(b)[, Ala. R. Civ. P.,] representative to establish the details and veracity of, <u>inter alia</u>:
>
> "a. The claims and defenses related to the Defendant's responsibility, control, ownership, interest, or preparation of service or food to the Plaintiffs as alleged.
>
> "b. The Defendant's interrogatory responses and material produced pursuant to requests for production.
>
> "c. The identity of witnesses to any material event leading up to and including the injuries.
>
> "d. The existence of all potential evidence and material subject to a preservation letter served on the Defendant prior to the filing of the lawsuit."

Ordonez's supplement to her request for a continuance points to specific health-department records that seem to contradict information supplied

17

by Yim's affidavit. Thus, she asserts the need to test by deposition the veracity of his assertions and to gather more information to support her response.

The record on appeal does indicate that Yim may not have always been careful in his use of the corporate form for CFMI, Forest Park, and Capitol Properties. In completed discovery, he made responses to interrogatories on behalf of Forest Park instead of CFMI. And he used CFMI's corporate name, not Capitol Properties' or Forest Park's, on the lease of the deli to Hernandez. More to the point regarding the respondeat superior and agency issues raised in CFMI's summary-judgment motion, the health-department records tend to show that operation of the grocery store was conducted in CFMI's corporate name. The records, thus, raise multiple questions regarding CFMI's assertion based on Yim's affidavit that it did not operate the grocery store.

The health-department records show that two grocery-store employees identified as employees of CFMI were sent to food-safety training a few months before S.C.O. was injured. Inspection records of the deli show that a violation notice was issued to CFMI and given to one of those employees just two months before S.C.O. was injured. Those

18

records raise questions regarding CFMI's assertions based on Yim's affidavit that CFMI had no employees and that no employees of CFMI were engaged in food service at the time of S.C.O.'s injuries.

Indeed, the deli was permitted in CFMI's corporate name. Thus, its operation seems to have occurred under authority granted by the health department to CFMI. This calls into question CFMI's assertion based on Yim's affidavit that CFMI had no authority over the deli and no right to control its operation by Forest Park or Hernandez.

CFMI suggests on appeal that the health department likely merely failed to update its records with the correct name for the grocery store and its owner. However, CFMI produced no evidence to support this assertion, and the assertion raises the question whether Yim or anyone on behalf of Forest Park or Hernandez made any attempt to obtain a permit from the health department for Forest Park or Hernandez. It seems possible that both Forest Park and Hernandez were content to operate under the original permit granted to CFMI rather than providing the health department with updated information about the corporate entity that Yim asserts was actually operating the store. Again, it

indicates a potential carelessness by Yim regarding his use of the corporate form.

Yim's lack of attention to the corporate form as indicated by the record on appeal, if confirmed and found to be more extensive than is apparent from the limited information presently available to Ordonez, could undermine Yim's assertions that CFMI had no employees, did not operate the grocery store, and had no control over the restaurant operating in the deli area of the store at the time of S.C.O.'s injuries. Such information could expose CFMI to liability and, thus, is critical to Ordonez's response to CFMI's motion for a summary judgment.

## Conclusion

Based on the foregoing, we conclude that the trial court exceeded its discretion in denying Ordonez's motion for a continuance under Rule 56(f) to take Yim's deposition. As a result, there is no need for us to address the remainder of Ordonez's arguments on appeal about the substance of the trial court's summary-judgment ruling. We thus reverse the trial court's summary judgment for CFMI and remand the case to the trial court for further proceedings.

REVERSED AND REMANDED.

Stewart, C.J., and Shaw, Mendheim, and Cook, JJ., concur.